## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

---

NICOLE RIKER,

                                                    Plaintiff,

              v.                                         3:17-CV-333 (ATB)

COMMISSIONER OF SOCIAL SECURITY,

                                                    Defendant.

---

PETER A. GORTON, ESQ., for Plaintiff
PETER W. JEWETT, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

### MEMORANDUM DECISION and ORDER

This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1 and the consent of the parties. (Dkt. Nos. 4, 7).

## I.    PROCEDURAL HISTORY

Plaintiff protectively filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") Benefits on May 21, 2012, alleging disability beginning January 1, 2012. (Administrative Transcript ("T") at 157-70, 461). The applications were denied initially on September 18, 2012. (T. 77-92). Administrative Law Judge ("ALJ") F. Patrick Flanagan held a hearing on September 26, 2013, at which plaintiff and vocational expert ("VE") Linda Vause testified. (T. 535-583). On December 20, 2013, ALJ Flanagan found that plaintiff was not disabled.

(T. 458-475). The ALJ's decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on January 8, 2015. (T. 484-90).

On February 10, 2015, plaintiff filed an action in the Northern District of New York, challenging the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). On June 29, 2016, Magistrate Judge William B. Mitchell Carter issued a Report-Recommendation, in which he recommended that the case be remanded because the Commissioner had not met her burden at step five of the sequential disability analysis. (T. 491-522). On July 20, 2016, the Honorable Glenn T. Suddaby, Chief United States District Judge, adopted this report-recommendation in its entirety, and the case was remanded to the Commissioner. (T. 526-28).

On August 23, 2016, the Appeals Council vacated the Commissioner's original decision and remanded the case to an ALJ for further proceedings consistent with the court's order. (T. 531). The case was heard before ALJ Elizabeth W. Koennecke by video conference on December 19, 2016. (T. 440-457). Plaintiff and VE Vause each testified. On January 12, 2017, ALJ Koennecke issued a decision, finding that plaintiff was not disabled. (T. 412-34). This decision became the final decision of the Commissioner on March 14, 2017. (T. 413). Plaintiff filed this action on March 22, 2017, challenging the Commissioner's current decision. (Dkt. No. 1).

## II.    GENERALLY APPLICABLE LAW

### A.    Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that she is "unable to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps.

3

However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

### B.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d at 417; *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id*. *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles*

*v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony).  However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.  FACTS

As of the date of the December 2016 administrative hearing, plaintiff was 40 years old. (T. 157).  She was a high school graduate, who had attended regular education classes. (T. 274).  She has joint custody of three teenage sons. (T. 274, 343.) Plaintiff's previous employment included work in the billing and accounts receivable offices of several retail stores. (T. 36-41, 234).  Her most recent employment was as a server in a casual dining restaurant. (T. 40-41, 234).  In January 2012, she began reducing the hours she worked at the restaurant due to her medical impairments. (T. 551-52).  She ultimately left the server position in May 2012.  (*Id.*)

Plaintiff was diagnosed with rheumatoid arthritis in 2002, and she testified that her symptoms have increased over time. (T. 293, 443-444).  She experiences pain, swelling, and stiffness in her neck, hands and feet, with the greatest pain on the left side of her body. (T. 293, 699).  She had significant left hip pain, prompting total left hip replacement surgery in 2006. (T. 389, 395).  The severity of her symptoms fluctuates, and is aggravated by activity. (T. 761).

After plaintiff's rheumatoid arthritis diagnosis, she began experiencing depression symptoms that were characterized as "moderately severe." (T. 275, 364).

She reported that her depression symptoms, including dysphoria, crying spells, and feelings of worthlessness, became worse as her physical pain increased. (T. 275). She has no history of psychiatric hospitalization or outpatient treatment. (T. 274).

The ALJ's decision provides a detailed statement of the medical and other evidence of record. (T. 418-25). Rather than reciting this evidence at the outset, the court will discuss the relevant details below, as necessary to address the issues raised by plaintiff.

## IV.    THE ALJ'S DECISION

The ALJ[1] first determined that plaintiff met the insured status requirements through June 30, 2017. (T. 418). The ALJ then determined that plaintiff had not engaged in substantial gainful activity since the alleged onset date of January 1, 2012. (*Id*.). At step two of the sequential evaluation, the ALJ found that plaintiff had the following severe impairments: rheumatoid arthritis, degenerative disc disease of the cervical spine, osteoarthritis of the feet, and avascular necrosis of the left hip. (T. 418). At the third step, the ALJ determined that plaintiff's impairments did not meet or medically equal the criteria of any listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P. (T. 420-21).

The ALJ found at step four of the analysis that plaintiff had the RFC to occasionally lift/carry ten pounds and to frequently lift nominal weight; to stand and walk for two hours out of an eight hour workday; to sit for six hours out of an eight

---

[1] Because this proceeding is only addressing the January 12, 2017 disability determination, all further references to "ALJ" refer to ALJ Koennecke.

hour workday; to occasionally use the right upper extremity for reaching, handling, and fingering, and to frequently use the left upper extremity for reaching, handling, and fingering. (T. 421-25).  In making the RFC determination, the ALJ stated that she considered all of the plaintiff's symptoms, and considered the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.1529 and 416.929" and Social Security Rulings ("SSRs") 96-4p. (T. 421).  Finally, the ALJ stated that she considered opinion evidence pursuant to 20 C.F.R. §§ 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p. (*Id.*)

The ALJ also found that plaintiff's description of her impairments and the resulting functional limitations were not fully credible in light of the record evidence. (T. 422).  The ALJ next determined that plaintiff was unable to perform her past relevant work, but that her accounting background and the clerical and keyboard skills that she acquired from her previous positions were transferable to other occupations. (T. 426).  Relying on the VE testimony, the ALJ found that there were jobs that existed in significant numbers in the national economy that plaintiff could perform. (T. 426-27).  Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of January 1, 2012 through the date of her decision. (T. 427).

## V.    **ISSUES IN CONTENTION**

Plaintiff is only challenging the ALJ's determination as it relates to the period after September 24, 2013. (Dkt. No. 1 ¶ 3; Pl.'s Br at 3)  She raises the following arguments:

(1)    The ALJ's RFC assessment was not supported by substantial evidence due to the ALJ's failure to properly evaluate the medical evidence. (Pl.'s Br. at 13-24) (Dkt. No. 12).

(2)    The ALJ's step five determination was not supported by substantial evidence. (Pl.'s Br. at 24-25).

Defendant argues that the Commissioner's determination was supported by substantial evidence and should be affirmed. (Def.'s Br. at 4-11) (Dkt. No. 14). For the following reasons, this court agrees with defendant and will dismiss the complaint.

## DISCUSSION

## VI.    FAILURE TO RAISE ARGUMENT AT ADMINISTRATIVE LEVEL

### A.    Legal Standard

Although the Second Circuit has not ruled on this precise issue, several district courts in this Circuit, including this one, have held that "[t]he failure to present an argument to the ALJ constitutes waiver of the right to raise it on appeal." *See, e.g., Pierce v. Astrue*, 946 F. Supp.2d 296, 306 (W.D.N.Y. 2013) (collecting cases); *Avery v. Astrue*, No. 1:10-CV-264 (FJS), 2012 WL 5269618, at *6 (N.D.N.Y. Oct. 23, 2012). These holdings are based upon the premise that allowing a plaintiff to raise an issue on appeal for the first time in court "could . . . severely undermin[e] the administrative process." *Pierce*, 946 F. Supp. at 306 (quoting *Mills v. Apfel*, 244 F.3d 1, 8 (1st Cir. 2001)).

### B.    Application

SSR 83-20 provides the ALJ instruction on how to determine a claimant's onset date. *See* Titles II and XVI: Onset of Disability, 1983 SSR 83-20, 1983-1991 Soc. Sec.

Rep. Serv. 49, 1983 WL 31249 (S.S.A.).  The failure to follow SSR-83-20 constitutes grounds for remand when the Commissioner's decision is not otherwise supported by substantial evidence.  *Cataneo v. Astrue*, No. 11-CV-2671 (KAM), 2013 WL 1122626, at * 15 (E.D.N.Y.  March 17, 2013) (citation omitted).

In her applications for benefits, plaintiff alleged an onset date of January 1, 2012.[2] (T. 164).  The ALJ applied this date in her January 2017 decision. (T. 418).  In her federal complaint challenging the ALJ's decision, plaintiff contended for the first time that she should be considered disabled from September 24, 2013. (Dkt. No. 1, ¶ 3). Plaintiff never raised this argument at her December 19, 2016 administrative hearing, despite an opportunity to do so.[3] (T. 440-57).  It is likely that if the plaintiff had alleged a more recent onset date, it would have impacted the manner in which the ALJ evaluated the medical evidence, and the ultimate determination of disability.  Therefore, to the extent that plaintiff's "limited" appeal of the ALJ's decision could be read as an assertion that the ALJ erred in her calculation of the alleged onset date, such argument is waived.  *Pierce*, 946 F. Supp. 2d at 306 (assertion that ALJ erred in not finding that plaintiff was disabled after the date last insured was waived, because plaintiff did not raise it at the administrative level).  With that in mind, this court will address plaintiff's

---

[2] Plaintiff's counsel had significant discussion with ALJ Flanagan regarding the onset date of January 1, 2012 at plaintiff's first administrative hearing, on September 26, 2013. (T. 43-46).

[3] Because her case was being heard on remand, plaintiff was not required to file any written exceptions with the Appeals Council before filing an action in federal court. 20 C.F.R. §§ 404.984, 416.1484. The ALJ's decision became the final decision of the Commissioner once sixty days had expired, so long as the Appeals Council did not assume jurisdiction on its own authority within that time. *Id*.

argument that the ALJ should have found plaintiff disabled as of September 24, 2013.

## VII.  RFC EVALUATION/TREATING PHYSICIAN

### A.    Legal Standards

#### 1.    RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ."  A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations.  20 C.F.R §§ 404.1545, 416.945.  *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)).  An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities.  *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183; *Sullivan v. Secretary of HHS*, 666 F. Supp. 456, 460 (W.D.N.Y. 1987)).  The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-

medical evidence. *Trail v. Astrue*, No. 5:09-CV-1120, 2010 WL 3825629 at \*6 (N.D.N.Y. Aug. 17, 2010) (citing Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at \*7).

### 2. Treating Physician

"Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record . . . ." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The ALJ must properly analyze the reasons that a report of a treating physician is rejected. *Halloran,* 362 F.3d at 32-33. An ALJ may not arbitrarily substitute his own judgment for competent medical opinion. *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999).

### B. Application

It is the province of the ALJ to resolve genuine conflicts in the record. *Veino*, 312 F.3d at 588. However, the Commissioner need not "reconcile explicitly every shred of medical testimony." *Galiotti v. Astrue*, 266 F. App'x 66, 66 (2d Cir. 2008) (citing *Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983)). Here, the ALJ resolved conflicts between the various medical opinions by assigning the greatest weight to those opinions that she deemed most consistent with plaintiff's overall treatment record and activities. In doing so, the ALJ appropriately evaluated the conflicting medical evidence, and made an RFC finding that was consistent with the overall record. *See*

11

*Matta v. Astrue*, 508 F. App'x. 53, 56 (2d Cir. 2013) (although ALJ's conclusion did not perfectly correspond with any of the opinions of medical sources, ALJ was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole).  In light of the ALJ's analysis of plaintiff's medical history, the relevant medical opinions, and plaintiff's activities of daily living, this court concludes that her RFC determination was supported by substantial evidence, as summarized below.

### 1.    Physical Limitations

One of plaintiff's treating physicians, Dr. Paul Dura, provided three medical source statements regarding her physical limitations.  The first was dated August 12, 2013, and covered a time period ending on June 26, 2013. (T. 386).  The second, dated September 24, 2013, covered the time period between August 16, 2013 and September 24, 2013. (T. 411).  The third, dated November 17, 2016, covered the period between September 24, 2013 to November 17, 2016. (T. 772).

The ALJ based her RFC determination in significant part upon Dr. Dura's first opinion, dated August 12, 2013. (T. 385-386, 423).  In that medical source statement, Dr. Dura opined that plaintiff could sit for six to eight hours per workday, and could stand or walk for approximately three to four hours per workday. (T. 386).  The ALJ assigned these findings "great weight," because they were consistent with clinical findings and plaintiff's reported activities of daily living. (T. 424).  For example, the ALJ cited treatment records depicting plaintiff's rheumatoid arthritis as "reasonably stable," and findings that she had good movement in her lower extremities. (T. 317,

320, 324, 326, 327, 422).  Despite pain and swelling in her feet, plaintiff had a "normal to antalgic gait" and good strength and sensation in her lower extremities. (T. 370, 385, 405, 422).  The ALJ also cited plaintiff's statements that she was able to cook, clean, shop, drive, and take public transportation. (T. 276, 294).

The ALJ also assigned great weight to Dr. Dura's September 24, 2013 opinion that plaintiff was capable of fine motor activity, handling, and reaching with her right and left upper extremities for up to one-third of each workday. (T. 411, 424).  The ALJ found that this opinion was consistent with plaintiff's medical records, which showed good strength in the upper extremities, despite swelling and tenderness in plaintiff's hands and limited range of motion in her left wrist. (T. 323, 353, 358).  The ALJ also noted that this opinion was consistent with plaintiff's statements that she had some difficulty dressing, opening jars, and feeding herself due to problems with her hands and arms.  (T. 224, 424).

Plaintiff contends that the ALJ erred by failing to give controlling weight to Dr. Dura's November 17, 2016 opinion without providing good reasons for doing so. (T. 770-72).  In that November 2016 opinion, Dr. Dura opined that plaintiff could sit for approximately six hours per eight hour workday, but could only stand or walk for approximately one hour per workday. (T. 771).  He also opined that plaintiff could occasionally lift five to ten pounds per day, and frequently lift up to five pounds per day. (*Id*.)  Dr. Dura further opined that plaintiff could use her right hand for fine motor activity, and could use her right hand and arm for reaching up to one-third of the workday. (T. 772).  He opined that plaintiff had greater limitations on the left side, and

could use her left hand for fine motor activity and reach with her left hand and arm for less than one-third of each workday. (*Id*.)  He further opined that plaintiff would be off task between fifteen and twenty percent during a workday, and was likely to miss three days per month due to her impairments. (T. 771).  Although written in November 2016, Dr. Dura's opinion covered the period beginning on September 24, 2013. (T. 772).  The opinion includes minimal narrative.

During the December 19, 2016 hearing, the VE testified that the inability to walk or stand for more than one hour during a workday would preclude most sedentary occupations. (T. 456).  Therefore, if the ALJ had given controlling weight to Dr. Dura's November 2016 opinion, she would be more likely to find that plaintiff was disabled from September 24, 2014.  Instead, the ALJ based her opinion on the entirety of the medical evidence and the VE testimony regarding available work, and concluded that some sedentary positions existed that plaintiff could still perform.  Although the ALJ's RFC determination was less restrictive than Dr. Dura's most recent opinion, this court finds that it was still supported by substantial evidence, as explained below.

The ALJ's recitation of the medical evidence demonstrates that she assigned greater weight to those opinions that she deemed most consistent with the entire medical record and plaintiff's reported daily activities. (T. 423-25).  For example, the ALJ cited February 2013 notes from a treating neurologist, Dr. Saeed Bajwa, that described plaintiff in "no acute distress," with "no motor weakness, no sensory loss, intact balance and gait, and mild, at most, restrictions in range of motion in her neck." (T. 423).  The ALJ also cited August 2013 treatment records from Dr. Dura that

14

described plaintiff's condition as "stable," and numerous office visits from that period in which plaintiff reported reduced or manageable pain. (T. 360, 405, 423, C20F).  The ALJ also cited March 2016 treatment notes showing that plaintiff improved with medication, and an April 2016 examination that resulted in "normal" findings. (T. 423, 660, 737).

The ALJ found no support for that portion of Dr. Dura's November 2016 opinion that plaintiff's "pain, fatigue, diminished concentration[,] work pace or need to rest" would lead plaintiff to be off-task between fifteen and twenty percent of the time, and to be absent from work three days per month. (T. 424, 770-71).  She noted that plaintiff had not missed any appointments due to her physical impairments, and that there had been no tests to assess plaintiff's ability to stay on task. (T. 424).  Elsewhere in her decision, the ALJ noted that plaintiff's daily activities included reading, writing, watching television, and playing games with her children. (T. 425).  She also cited Dr. Loomis' consultative psychiatric opinion that plaintiff had mild limitations with regard to attention and concentration. (T. 276, 424).  "[I]t is well-settled that the performance of basic daily activities does not necessarily contradict allegations of disability, as people should not be penalized for enduring the pain of their disability in order to care for themselves." *Stoesser v. Comm'r of Soc. Sec.*, No. 08-CV-643 (GLS/VEB), 2011 WL 381949, at *6-7 (N.D.N.Y. Jan. 19, 2011) (citation omitted).  However, where as here, the ALJ factored plaintiff's daily activities into her assessment of the full medical record, her assignment of lesser weight to Dr. Dura's opinion is supported by substantial evidence.

Plaintiff contends that the ALJ was required to rely upon the "only recent medical opinion of record" in determining plaintiff's disability beginning on September 24, 2013. However, she fails to support her argument that Dr. Dura's November 2016 opinion, issued more than three years after the new alleged onset date, would be undisputedly more accurate that the same physician's opinions that were issued in August and September 2013. Plaintiff's argument is further stymied by her contention that the ALJ should have given greater weight to the opinion of Dr. Harry Werner, which is dated June 15, 2012. (Pl.'s Br. at 22-23). Thus, plaintiff's reliance upon the Second Circuit's recent decision in *Gavazzi v. Berryhill*, 687 F. App'x 98 (2d Cir. 2017) is misplaced. In that case, the Second Circuit held that an ALJ is "not entitled to assign minimal or no weight" to a treating source without "input from additional medical practitioners." *Gavazzi*, 687 F. App'x at 100. In this case, the ALJ provided several reasons for discounting Dr. Dura's 2016 opinion, based upon the treating physician's previous opinions and the longitudinal medical record, that included the relevant period between 2013 and 2016. (T. 421-25). An ALJ retains the discretion to reach a conclusion inconsistent with a treating physician's opinion where that conclusion is supported by sufficient contradictory evidence. *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983).

The ALJ also considered other medical opinions in reaching her RFC determination. She assigned "some weight" to the opinion of Dr. Musthaq Sheikh, who performed a consultative examination of plaintiff on September 12, 2012. (T. 293-297, 424-25). Dr. Sheikh opined that plaintiff had "moderate" limitations in lifting, carrying

and using her left hand, which the ALJ found consistent with the medical evidence described above.  *See Sweeting v. Colvin*, No. 12-CV-917, 2013 WL 5652501, at *8 (N.D.N.Y. Oct. 15, 2013) (use of the term "moderate" was not vague where consultative examiner made specific findings based on physical examination of plaintiff)*; Waldau v. Astrue*, No. 5-11-CV-925 (GLS), 2012 WL 6681262, at *4 (N.D.N.Y.  Dec. 21, 2012) (consultative examiner's conclusion was not impermissibly vague where it was "well supported by his extensive examination"); *cf. Flake v. Comm'r of Soc. Sec.*, No. 7:15-CV-1128 (GTS/WBC), 2016 WL 7017355, at *9 (N.D.N.Y. Nov. 10, 2016) (remanding where ALJ relied upon consultative examiner's vague opinion that was not clarified by examination results or the record).  The ALJ discounted other portions of Dr. Sheikh's opinion, including her finding that plaintiff had no limitations with regard to reaching, because of a lack of record support. (T. 297, 425).

The ALJ assigned no weight to the June 15, 2012 letter-opinion of Dr. Harry Werner. (T. 265, 425).  Plaintiff contends that the ALJ did not sufficiently analyze the opinion of Dr. Werner, who is a treating physician. (Pl.'s Br. at 22-23).  This argument is unpersuasive.  Dr. Werner merely noted in a two sentence letter that plaintiff was unable to work due to an increase in her arthritis symptoms. (T. 265).  He further recommended that plaintiff stay out of work for three months while she pursued treatment to improve her symptoms. (*Id*.)  The ALJ's assignment of "no weight" to these statements was not an error, because an opinion that a plaintiff is disabled is an issue reserved to the ALJ.  20 C.F.R. §§ 404.1527(d), 416.927(d).  A statement, even

17

from a treating physician, that an individual is disabled cannot itself be determinative. *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999).  In addition, the ALJ was not obligated to re-contact Dr. Werner to supplement his opinion, because the record, which included extensive treatment notes, opinions from other treating sources, and consultative examination reports was adequate to determine whether or not plaintiff was disabled.[4] *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996).

It is evident from the decision that the ALJ recognized the episodic nature of rheumatoid arthritis, and did not reject plaintiff's assertion that her symptoms, and the resulting limitations, had increased since her 2013 hearing.[5]  (T. 422-24).  The ALJ merely found that the medical record did not support the level of deterioration described in Dr. Dura's 2016 opinion or plaintiff's testimony. (T. 422).  For example, the ALJ cited treatment notes from July 2016,  showing that plaintiff complained of hand pain and decreased mobility in her left wrist. (T. 423, 651).  However, this increase in symptoms coincided with a period of several months when she was unable to obtain prescribed medication due to a delay in insurance authorization. (T. 423, 650).  During the same examination, plaintiff showed good mobility in her elbows, shoulders, and cervical spine. (T. 423, 651).  The ALJ also cited November 2016 treatment notes, showing decreased range of motion of the cervical spine and shoulders with muscle tightness, along with "chronic changes" to plaintiff's left wrist. (T. 423, 700).  These

---

[4] Magistrate Judge Carter reached the same conclusion when plaintiff raised this argument in the earlier proceeding. (T. 510-512).

[5] If plaintiff's limitations have increased since the ALJ's January 1, 2017 decision, plaintiff could file a new application requesting a disability benefits from that date.

18

same reports showed that her right wrist was "normal," and her reflexes were intact. (*Id.*)  While her right hip showed decreased movement, her left hip showed good range of motion. (*Id.*)  By detailing these more recent medical records, the ALJ demonstrated their consistency with those opinions to which the ALJ assigned greatest weight.  Thus, the ALJ provided sufficient evidence to support the weight that she assigned to each of the three treating source opinions, even if the relevant period were to begin on September 24, 2013.

By explaining her conclusion regarding plaintiff's physical capabilities, the ALJ appropriately evaluated the conflicting medical evidence, and made an RFC finding that was consistent with the overall record.  *See Matta*, 508 F. App'x. at 56.  Accordingly, the ALJ's physical RFC determination was supported by substantial evidence.

### 2.    Mental Limitations

Plaintiff contends that the ALJ erred by failing to find that plaintiff's diagnosed depression was a severe impairment, and compounded that error by failing to include any mental limitations in her RFC determination. (Pl.'s Br. at 23-24).  This court finds that the ALJ's step two determination and her consideration of the impact of plaintiff's depression on her RFC were both supported by substantial evidence.

At step two, the ALJ reviewed the "special technique" and considered plaintiff's limitations in the four broad functional areas, known as the "paragraph B criteria."[6] (T.

---

[6] The "paragraph B" criteria are taken from the four broad functional areas set out in the disability regulations for evaluating mental impairments as stated in section 12.00C of the Listing of Impairments. (T. 722) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00C).  The evaluation of a claimant's limitations in the four functional areas is used to determine whether plaintiff's mental impairment is "severe" as well as whether the claimant's impairment meets the criteria for a Listed

419).  The regulations provide that if "we rate the degree of your limitation in the first three functional areas as 'none' or 'mild' and 'none' in the fourth area, we will generally conclude that your impairment(s) is not severe." 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).  If the impairment is found to be severe, then the ALJ will consider that impairment at step three and determine whether the severity is sufficient to meet the other criteria contained in the various Listed Impairments. 20 C.F.R. §§ 1520a(d)(2), 416.920a(d)(2).

The ALJ found that plaintiff had mild limitations in the functional areas of daily living, social functioning, and concentration, persistence, or pace. (T. 420).  She found no episodes of decompensation in plaintiff's medical history. (*Id.*)  The ALJ noted that plaintiff was able to dress, bathe, groom herself, cook, do general cleaning, do laundry, manage money, shop independently, and enjoyed spending time with family. (T. 419).  Plaintiff reported problems paying attention due to her physical pain, and memory problems arising from her medication, but Dr. Loomis found only mildly impaired attention, concentration, and memory skills that could have been prompted by nervousness. (T. 224, 276, 420).  Plaintiff had no history of psychiatric outpatient treatment or hospitalizations. (T. 274).  Thus, the ALJ did not err in finding that plaintiff's depression was non-severe.

Often, when there are multiple impairments, and the ALJ finds some, but not all of them severe, an error in the severity analysis at step two may be harmless because the

---

Impairment under step three of the disability analysis. 20 C.F.R. § 404.1520a(c)(3), 416.920a(c)(3). The four functional areas are: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. *Id.*

ALJ continued with the sequential analysis and did not deny the claim based on the lack of a severe impairment alone. *Tryon v. Astrue*, No. 5:10-CV-537, 2012 WL 398952, at *3 (N.D.N.Y. Feb. 7, 2012) (citing *Kemp v. Commissioner of Soc. Sec.*, No. 7:10-CV-1244, 2011 WL 3876526, at *8 (N.D.N.Y. Aug. 11, 2011)).  Therefore, even if the ALJ's had erred by concluding that plaintiff's depression was not a severe impairment, such error would be harmless, because the ALJ considered plaintiff's depression as part of her RFC determination.

The ALJ reviewed plaintiff's treatment notes, which indicated that her condition was "situational," because her depression symptoms were aggravated during times of financial stress and physical pain. (T. 364, 423).  The ALJ also noted that plaintiff's depression symptoms improved under treatment from her primary care provider, without any referral to a mental health professional. (T. 360, 423).  The ALJ also considered consultative examiner Dr. Cheryl Loomis's opinion that plaintiff "cannot maintain attention and concentration," but found this inconsistent with Dr. Loomis' consultative examination results showing only mild impairment in this area. (T. 277).  Dr. Loomis also opined that plaintiff's symptoms "appear to be consistent with psychiatric problems, but in itself, this does not appear to be significant enough to interfere with [plaintiff's] ability to function on a daily basis." (*Id.*)  Because the ALJ considered the objective medical evidence, the consultative examiner's opinion, and plaintiff's daily activities in determining that plaintiff's depression did not impose any limitations on her RFC, the ALJ's determination was supported by substantial evidence.

## VIII. **VOCATIONAL EXPERT**

### A.    **Legal Standards**

At step five of the disability analysis, the burden shifts to the ALJ to demonstrate that there is other work in the national economy that plaintiff can perform.  *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).  "Work which exists in the national economy" means work existing in significant numbers "either in the region where the individuals live or in several regions of the country." *McCusker v. Comm'r of Soc. Sec.*, No. 1:13-CV-1074, 2014 WL 6610025, at *3 (N.D.N.Y. Nov. 20, 2014) (quoting SSR 82-53, 1982 WL 3134, at *3 (1982) (internal quotation marks removed).  This definition emphasizes "that . . . a type[] of job which exists only in very limited numbers or in relatively few geographic locations may not be said to 'exist in the national economy.'" *Id.*

If the ALJ utilizes a VE at the hearing, the VE is generally questioned using a hypothetical question that incorporates plaintiff's limitations.  *See Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981).  Although the ALJ is initially responsible for determining the claimant's capabilities based on all the evidence, *see Dumas v. Schweiker*, 712 F.2d 1545, 1554 n.4 (2d Cir. 1983), a hypothetical question that does not present the full extent of a claimant's impairments cannot provide a sound basis for vocational expert testimony.  *See De Leon v. Sec'y of Health and Human Servs.*, 734 F.2d 930, 936 (2d Cir. 1984); *Lugo v. Chater*, 932 F. Supp. 497, 503-04 (S.D.N.Y. 1996).  Conversely, the ALJ may rely on a VE's testimony regarding the availability of work as long as the hypothetical facts the expert is asked to consider are based on

substantial evidence and accurately reflect the plaintiff's limitations. *Calabrese v. Astrue*, 358 F. App'x 274, 276 (2d Cir. 2009). Where the hypothetical is based on an RFC analysis supported by substantial facts, the hypothetical is proper. *Id*. at 276-277.

### B.    Application

Because the ALJ found that plaintiff's nonexertional limitations would narrow the range of work that plaintiff could perform, the ALJ utilized the services of a VE. (T. 37-39, 77-82). The ALJ offered the VE the hypothetical of an individual of plaintiff's age, education, and work experience who: could lift and carry ten pounds occasionally and frequently; could stand and walk for two hours in an eight hour workday; could sit for six hours in an eight hour workday; and could perform occasional reaching, handling, and fingering. (T. 456). The ALJ also asked the ALJ to testify regarding the transferability of skills from plaintiff's prior employment. (T. 451). The VE identified several sedentary jobs that an individual with plaintiff's RFC and work experience could perform. (T. 451-52).

Plaintiff argues that because the ALJ erred with respect to her RFC analysis, the hypothetical question based upon that RFC did not take all of plaintiff's impairments into account. (Pl.'s Br. at 3-4). However, because this court has found that the ALJ's findings regarding plaintiff's RFC were supported by substantial evidence, her hypothetical question that mirrored the RFC and the resulting reliance upon the VE testimony were similarly supported by substantial evidence. Accordingly, the ALJ's step five determination was supported by substantial evidence.

**WHEREFORE**, based on the findings above, it is

ORDERED, that the Commissioner's decision is **AFFIRMED**, and plaintiff's complaint is **DISMISSED**, and it is

ORDERED, that judgment be entered for the **DEFENDANT.**

Dated:    June 1, 2018

**Hon. Andrew T. Baxter**
**U.S. Magistrate Judge**

24